# UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| Mark Ardito, | |
| *Plaintiff,* | |
| v. | Civil Action No. 1:21-cv-00142-JAW |
| Solvay S.A., Solvay Specialty Polymers USA, LLC | |
| *Defendants.* | |

## MOTION TO DISMISS OF DEFENDANT SOLVAY SPECIALTY POLYMERS USA, LLC WITH INCORPORATED MEMORANDUM OF LAW

Defendant Solvay Specialty Polymers USA, LLC ("SSP") submits this Motion to Dismiss and Incorporated Memorandum ("Motion") and respectfully requests the Court to dismiss Plaintiff Mark Ardito's ("Ardito") Complaint and Demand for Jury Trial and Injunctive Relief ("Complaint") in full as to SSP pursuant to Federal Rule of Civil Procedure 12(b)(6).

## INTRODUCTION

Ardito has appointed himself as the enforcer of private contracts to which he is neither a party nor a signatory and has brought this action asserting he purportedly engaged in protected activity under a federal statute (the False Claims Act) that has no application to his allegations. Specifically, he seeks to pursue a whistleblower retaliation lawsuit against his current employer, SSP, [1] based on the federal False Claims Act ("FCA"), 31 U.S.C. § 3730(h), the Maine Whistleblower's Protection Act ("MWPA"), 26 M.R.S. §§ 831–40, and the Maine Human Rights

---

[1] Because Ardito has not effectuated service of process on Solvay S.A. or sufficiently pled jurisdictional facts, Solvay S.A. is not part of this case. Solvay S.A. reserves the right to join this Motion if Ardito somehow remedies those defects.

Act ("MHRA"), 5 M.R.S. §§ 4551–4634.  His Complaint should be dismissed in full because he has not alleged facts sufficient to establish a single element of these claims.

*First*, Ardito's claims are predicated on his misguided assertion that he engaged in conduct protected under the FCA, Compl. ¶ 70, which prohibits only false claims for payment submitted to the federal government.  Nowhere in the Complaint, however, does Ardito allege that he learned or investigated facts or circumstances relating to SSP's submission of any false claims to the government.  In fact, he does not even allege that SSP submitted (or had the potential to submit) any such claims.  Rather, Ardito alleges that he believed SSP had violated private nondisclosure agreements ("NDAs") with certain of its customers, that he informed SSP about his belief, and flagged potential weaknesses in SSP's data systems.  But such action to report potential violations of NDAs does not constitute "protected conduct" as a matter of law.

*Second*, Ardito fails to allege, as he must, that SSP had knowledge that he engaged in protected conduct during the relevant period.  This is unsurprising given his failure to plead protected conduct in the first instance, but it too is a flaw warranting dismissal of his claims.

*Third*, although Ardito baldly states that SSP retaliated against him by creating a "hostile work environment" and therefore "constructively discharged" him, Compl. ¶¶ 77-78, his allegations actually contradict such a claim.  Indeed, Ardito concedes that he <u>did not resign</u> and remains SSP's employee.  He does not allege that he was ever mistreated, discharged, demoted, disciplined, received a negative performance review, or had his compensation or benefits reduced by SSP.  To the contrary, Ardito acknowledges that SSP fully accommodated his requests for medical leave, allowed him to return to work when he felt ready, and upon his return even placed him on a Steering Committee specifically designed to address the concerns Ardito raised.  He also concedes that multiple individuals from SSP's legal and compliance organizations heard him out

and looked into his complaints. At its core, this litigation is fueled by Ardito's frustration and disagreement with SSP regarding the validity and resolution of his complaints. But Ardito's allegations do not sustain a "hostile work environment" or "constructive discharge" claim.

*Fourth*, Ardito does not plausibly allege a causal link between his conduct and SSP's purported retaliation against him. To be sure, he makes the bare allegation that SSP retaliated against him, but Ardito does not say *how* or *why* SSP did so with any precision or detail beyond merely parroting legal conclusions and labels. Formulaic pleading of this kind is insufficient as a matter of law under the FCA and Maine law. Even read in the most charitable light, Ardito's only factual allegations actually sever rather than establish a causal link between his actions and the circumstances he believes gave rise to adverse employment action.

SSP has and will continue to honor its employment obligations and relationship with Ardito, but the Court should dismiss his Complaint in full as lacking any basis in law.

<u>**STATEMENT OF FACTS**</u>

**I.     The Parties**

Solvay S.A. is a global chemicals and materials manufacturing company organized and headquartered in Belgium. It has several business units, including SSP.

SSP is a Delaware LLC with its headquarters in Alpharetta, Georgia. It engages in the research, development, and manufacture of high performance polymers for use in various commercial applications.

At all relevant times, Ardito has been employed by SSP as a Sales Development Manager and has worked remotely from his home in Belgrade, Maine. Ardito worked on SSP's electronics team and reported to Vivian Tong ("Ms. Tong"), who is based in Shanghai, China.

## II.    Ardito's Complaints Regarding Nondisclosure Contracts[2]

SSP hired Ardito in 2003.  Compl. ¶ 11.  Since that time, he has enjoyed a successful career at SSP and has consistently received positive performance reviews, along with commensurate salary increases and incentive payments.  *Id*. ¶¶ 12–13.  Apart from his medical leave in late 2018 and much of 2019, there has been no interruption in his job performance or duties.  *Id.* ¶ 48.

Ardito first raised concerns about his Chinese colleagues and SSP's handling of client information with regard to confidentiality obligations in mid- to late-2018.  *Id*. ¶ 26.  He reached out to an SSP Business Director to relate concerns that SSP was exposing customer confidential information to potential misuse.  *Id.*  When Ardito concluded that SSP was taking too long to investigate his accusations, he unilaterally screened company information from his Chinese colleagues in violation of company policy.  *Id*. ¶¶ 30–33.  By the close of 2018, Ardito had escalated his complaints up the SSP chain of authority, again reporting that he believed his Chinese supervisor, Ms. Tong, among others, to be untrustworthy and likely misusing U.S. company technology to benefit SSP's Chinese customers in violation of NDAs between SSP and its customers.  *Id.* ¶ 36.  Ardito spoke with individuals in SSP's legal and compliance organization who listened and agreed to investigate his concerns.  *Id.* ¶¶ 44, 58–60.

Ardito alleges that eventually the stress of his concerns regarding SSP's investigations of his complaints and handling of U.S. customer information became too much for him, so he took a paid medical leave in December 2018 that extended through most of 2019.  *Id*. ¶¶ 48–50.  Ardito concedes that even during his leave when he was not working, SSP paid him.  *Id*. ¶ 49.  He does not allege that SSP obstructed his leave or otherwise impugned him for making his complaints.  In

---

[2] SSP disputes Ardito's factual statements and relies on them solely for purposes of this Motion.

the meantime, SSP investigated Ardito's complaints and concluded that no customer information had been compromised in violation of any nondisclosure agreement. *Id.* ¶¶ 58–65.

When Ardito felt well enough to resume his job duties, he returned to work and was asked to join a Steering Committee comprised of Solvay Vice Presidents (other than Ardito) that SSP was creating to better understand and specifically address the concerns Ardito raised regarding protection of customer confidential information. *Id.* ¶¶ 51–52, 54. Ardito was apparently displeased with the work of the Steering Committee. *Id.* ¶¶ 52–57.

Shortly after returning to work, Ardito filed a complaint against SSP with the Maine Human Rights Commission (the "Commission"). To protect itself and ensure preservation of an accurate record, SSP issued a number of preservation requests related to Ardito's accusations. *Id.* ¶¶ 4, 66–69. Ardito remains an employee at SSP to this day.

## APPLICABLE PLEADING STANDARD

Under Rule 12(b)(6), a court must dismiss a complaint that does not allege facts that, if "accepted as true[,] . . . 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The complaint may not rest on "'labels and conclusions,'" nor merely give a "'formulaic recitation of the elements of a cause of action,'" nor show "a sheer possibility that a defendant has acted unlawfully." *Id.* Rather, the complaint must offer sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## ARGUMENT

I.  **Ardito Does Not Allege Facts Sufficient To Maintain A Claim For Retaliation In Violation Of The False Claims Act**

The First Circuit has previously emphasized that the federal False Claims Act is not a general, all-purpose fraud statute. Instead, it targets only the knowing submission of false claims for payment to the federal government. *U.S. ex rel. Ge v. Takeda Pharm. Co.*, 737 F.3d 116, 124

(1st Cir. 2013). Indeed, "[b]ecause FCA liability attaches only to false claims, merely alleging facts related to a defendant's alleged misconduct is not enough." *Id.*; *see also Machado v. Sanjurjo*, 559 F.Supp.2d 167, 174 (D.P.R. 2008) ([T]he FCA does not encompass all fraudulent dealings involving federal funds but rather, its scope is limited solely to the submission of the claim for disbursement."). The First Circuit strictly requires allegations regarding the submission of false claims for payment to the government in order to invoke the FCA. *U.S. ex rel. Karvelas v. Melrose-Wakefield Hosp.,* 360 F.3d 220, 233 (1st Cir. 2004) (abrogated on other grounds by *Allison Engine Co., Inc. v. U.S. ex rel. Sanders*, 553 U.S. 662 (2008)); *U.S. ex rel. Rost v. Pfizer, Inc.*, 507 F.3d 720, 733 (1st Cir. 2007) (same) (abrogation on other grounds recognized by *U.S. ex rel. Gagne v. City of Worcester*, 565 F.3d 40, 42 (1st Cir. 2009)); *Gagne*, 565 F.3d at 48 ("FCA liability does not attach to violations of federal law or regulations . . . that are independent of any false claim.") (quotation omitted).

Sharing this narrow focus, the FCA's anti-retaliation provision only applies to adverse employment actions taken against an employee "because of lawful acts done by the employee . . . in furtherance of efforts to stop 1 or more violations of this subchapter." 31 U.S.C. § 3730(h)(1). In order to state a FCA retaliation claim, Ardito thus must allege three elements: (1) he engaged in FCA "protected conduct;" (2) SSP knew that he was engaged in such conduct; and (3) SSP discharged or discriminated against him because of his protected conduct. *Guilfoile v. Shields*, 913 F.3d 178, 187–88 (1st Cir. 2019); *accord Karvelas*, 360 F.3d at 235. Ardito has failed to allege facts sufficient to establish any of these elements.

### A. Ardito Does Not Plausibly Allege That He Engaged In "Protected Conduct"

Ardito's retaliation claim fails because it is not based on acts constituting "protected conduct" under the FCA. "Protected conduct" encompasses "investigations, inquiries, testimonies or other activities that concern the employer's knowing submission of false or fraudulent claims

for payment to the government." *United States ex rel. Booker v. Pfizer, Inc.*, 847 F.3d 52, 59 (1st Cir. 2017) (quotation omitted). Ardito must have made reports "that reasonably could lead to a viable FCA action." *Guifoile*, 913 F.3d at 188 (quotation omitted). While a plaintiff need not prove that the employer actually violated the FCA, "a necessary component of this inquiry" is the plaintiff alleging he or she attempted to report conduct that actually "could run afoul of the FCA." *Elliott-Lewis v. Abbot Laboratories, Inc.*, 411 F.Supp.3d 195, 206 (D. Mass. 2019) (quotation omitted). Thus, "when a plaintiff's FCA retaliation claim is based on a contractual, regulatory, or statutory violation, she must provide some reasonable basis for believing that the violation caused the submission of false claims and was material to the payment of any claims." *Id*. at 206 (quotation omitted).

This nexus to claims for government payment is critical. If an employee complains to his employer about general wrongdoing, or even about supposedly fraudulent practices, that cannot support a FCA retaliation claim unless the employee additionally connected the misconduct to claims for government payment. *Elliott-Lewis v. Abbott Laboratories* demonstrates the force of this requirement. 411 F.Supp.3d 195 (D. Mass. 2019). There, the court dismissed the plaintiff's FCA retaliation claim even though she was allegedly punished for reporting "violations of company policies and federal regulations." *Id*. at 207. Specifically, the plaintiff had raised internal concerns "about the company's off-label marketing and pre-approval promotion of its products." *Id*. at 199. This was undoubtedly a complaint, but it was not "protected conduct" that could support a FCA retaliation claim, because the plaintiff did not "**show any connection between the alleged unlawful [conduct] and the submission of false claims to the Government**." *Id.* at 208 (emphasis added). The court held that she had not engaged in "protected conduct" and dismissed her FCA retaliation claim because "she complained primarily about her relationship with her

managers, violations of company policy, and regulatory violations that have an unlikely connection to the submission of fraudulent claims to the Government." *Id*. *See also United States ex. rel. Karvelas v. Tufts Shared Services, Inc.* 433 F.Supp.3d 174, 184 (D. Mass. 2019) (holding that a plaintiff's complaints about patient safety and regulatory compliance—without clear allegations of the submission of false claims—were insufficient to constitute "protected conduct" under the FCA.)

Ardito's allegations in this lawsuit fare no better. At best, Ardito's Complaint can be read to assert claims that SSP retaliated against him for allegedly expressing concerns, making reports, and taking steps to protect confidential information purportedly belonging to SSP's U.S. customers from a perceived threat of misuse by his Chinese colleagues in violation of NDAs with those customers. *See* Compl. ¶¶ 15-18, 25–30, 33–37, 40-46. Nowhere, however, does he allege that he observed, investigated, or reported *any* SSP activity whatsoever that resulted in the submission of false claims for payment to the government. Indeed, he does not even attempt to connect any of the perceived confidentiality threats to some claim for payment to the government. *See Karvelas*, 433 F.Supp.3d at 184 ("Although correcting regulatory problems may be a laudable goal, it is not actionable under the FCA in the absence of actual fraudulent conduct."). He likewise does not allege SSP's "knowing submission of false or fraudulent claims for payment to the government," *Booker*, 847 F.3d at 59, and falls much shorter than even the allegations at issue in *Elliott-Lewis* and *Karvelas*, which were still deemed insufficient to plead FCA "protected conduct." Instead, Ardito impermissibly attempts to turn the FCA into an "all-purpose anti-fraud statute," which federal courts throughout the country have rejected. *See Ge*, 737 F.3d at 124; *Machado*, 559 F.Supp.2d at 174.

At bottom, Ardito's alleged actions were not "protected conduct" and his FCA retaliation claim may not proceed.

**B.    Ardito Does Not Plausibly Allege That SSP Knew He Was Engaged In Protected Conduct**

"To meet the knowledge element of an FCA retaliation claim . . . the employer must be on notice that the employee is engaged in conduct that reasonably could lead to a False Claims Act case." *U.S. ex rel. Hagerty v. Cyberonics, Inc.*, 95 F.Supp.3d 240, 273 (D. Mass. 2015) (quotation omitted).  A plaintiff thus must ordinarily show that "the employer [was] put on notice that the employee is taking action that reasonably could lead to an FCA case." *Maturi v. McLaughlin Research Corp.*, 413 F.3d 166, 172 (1st Cir. 2005).

Logically, if Ardito fails (as he has) to allege FCA "protected conduct," then neither of the subsequent two elements (*i.e.*, knowledge and causation) can exist.  *Maturi v. McLaughlin Research Corp.*, 326 F.Supp.2d 313, 318 (D.R.I. at 318 ("Since the latter two elements cannot exist without the first, the Court turns to the element of "protected conduct[.]") (quotations omitted).  Such is the case here.  Because the Complaint is devoid of any allegation regarding SSP's submission (or even potential submission) of a false claim to the government for payment, it is no surprise that the Complaint lacks corresponding allegations that Ardito's actions hinted to SSP that he was "engaged in conduct that reasonably could lead to a False Claims Act case." *Hagerty*, 95 F.Supp.3d at 273.  Instead, his allegations state and may support only the inference that he was reporting actual or potential weaknesses in SSP's operations or data systems that risked leakage of confidential information.  Ardito's alleged acts may have warned of exposure for contract claims, but they do not come close to providing SSP notice that Ardito was investigating issues that could lead to an FCA case.

**C.     Ardito Does Not Plausibly Allege That SSP Retaliated Against Him Because Of Protected Conduct**

Ardito's FCA retaliation independently fails because he does not allege sufficient facts to establish either that he was subjected to material adverse employment action or that SSP retaliated against him "because of" protected conduct.  SSP addresses both deficiencies below.

**1.     The Complaint Contains No Plausible Allegation that SSP Subjected Ardito To A Material Adverse Employment Action**

"Employment action is materially adverse when it would dissuade a reasonable worker from engaging in protected activity" and includes such actions as "a decrease in wage or salary . . . significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Lestage v. Coloplast Corp.*, 982 F.3d 37, 48 (1st Cir. 2020) (quotations and alterations omitted).  Ardito's allegations fail under this bar.

Ardito does not allege that SSP terminated his employment, he was demoted, suspended, transferred, disciplined, received a negative performance review, or had his compensation or benefits reduced.  Instead, Ardito remains SSP's employee.  Yet he attempts to plead that SSP retaliated against him after he returned from his paid medical leave by placing him in a "dramatically different job with significantly less responsibilities and opportunities for advancement."  *See* Compl. ¶¶ 48–50.  Ardito alleges no substance, however, beyond these conclusory buzz words.  How was Ardito's new job "dramatically different" with reduced "responsibilities and opportunities for advancement"?  The Complaint does not say because no facts exist to support such an allegation.  What steps did SSP take against him that would "dissuade a reasonable worker from engaging in protected activity?"  *Lestage*, 982 F.3d at 48.  SSP and the Court are left speculating.  Indeed, Ardito actually dispels any negative inference in his next breath by relating that his job responsibilities actually were augmented upon his return: on top of his job duties, SSP placed him on a "Steering Committee" comprised largely of Solvay Vice Presidents

designed to address the specific concerns he had raised with SSP. *Id*. ¶¶ 51, 54. Ardito may not avoid facts simply by alleging conclusions. *Cf. Henry v. NYC Health & Hosp. Corp.*, 18 F.Supp.3d 396, 406 (S.D.N.Y. 2014) (holding that police officer's "conclusory allegation that she was denied overtime, without more, is insufficient to substantiate an adverse employment action").

Ardito alternatively seeks to base his retaliation claim on SSP's sending a document preservation letter to his adult daughter after he filed a complaint with the Commission against SSP. *Id*. ¶¶ 66–69. This allegation likewise falls short, as a mere request to preserve documents to ensure preservation of evidence during the **more than seventeen months** that elapsed until the filing of the Complaint in this action is non-retaliatory as a matter of law. *Id*. ¶ 72; *cf. Sherman v. Fivesky, LLC*, 2020 WL 5105164, at *6 (S.D.N.Y. Aug. 31, 2020) ("Although the threat of a vigorous defense and the service of a third party subpoena . . . might well cause an employee to think carefully about whether to start litigation, at all, that threat is not . . . 'retaliation[.]'").

Last, although less than a model of clarity, Ardito arguably pleads that SSP constructively discharged him by creating a hostile work environment.[3] *See* Compl. ¶¶ 47–48. While it is true that a constructive discharge may be cognizable under the FCA, *see United States ex rel. Worthy v. Eastern Maine Healthcare Systems*, 2017 WL 211609, at *33–34 (D. Me. 2017) (Woodcock, J.), Ardito's allegations fall far short of pleading one.

To plead a claim of constructive discharge, Ardito must allege that "conditions were so intolerable that they rendered a seemingly voluntary resignation a termination." *Torrech–*

---

[3] To the extent Ardito seeks to allege an independent claim of FCA retaliation based on a "hostile work environment" alone, that legal theory is redundant to his assertions that he suffered a materially adverse employment action or was constructively discharged by SSP, and it fails for the same reasons. Indeed, SSP understands that these allegations are components of his constructive discharge claim. *See* Compl. 77–78 ("Solvay intentionally retaliated against Ardito including by creating a hostile work environment for him, constructively discharging him on December 10, 2018 . . .").

*Hernandez v. Gen. Elec. Co.*, 519 F.3d 41, 50 (1st Cir. 2008). "[I]n order for a resignation to constitute a constructive discharge, it effectively must be void of choice or free will." *Id*. In other words, an employee "must show that, at the time of his resignation, his employer did not allow him the opportunity to make a free choice regarding his employment relationship." *Id*. Furthermore, the standard "is an objective one; it cannot be triggered solely by an employee's subjective beliefs, no matter how sincerely held." *Roman v. Potter*, 604 F.3d 34, 42 (1st Cir. 2010) (citation omitted). "To prove constructive discharge, a plaintiff must usually 'show that her working conditions were so difficult or unpleasant that a reasonable person in [her] shoes would have **felt compelled to resign**.' " *Torrech-Hernandez*, 519 F.3d at 50 (emphasis added).

Ardito's constructive discharge theory fails most fundamentally because he does not allege the essential element of a constructive discharge: namely, that he resigned. *See id*. Plainly Ardito cannot maintain that he was "void of choice or free will," *id.*, and "felt compelled to resign," *id.*, when he has pleaded that following his medical leave of absence he chose to return to SSP's employ and has remained there until the present day, nearly two years later.

His theory also fails because he has not alleged any facts that would have made a reasonable person feel compelled to resign. Ardito does not allege even mild verbal criticism by his colleagues or supervisors. He does not allege that anyone interfered with his work for SSP. He does not allege that he was ostracized or targeted by SSP for unkindness. Although he says that his complaints regarding risks to customer information fell on deaf ears, his allegations actually reveal that SSP heard and took him seriously but his concerns did not withstand scrutiny. Compl. ¶¶ 36–38, 43–45, 51–65. At bottom, Ardito's constructive discharge allegations boil down to his internal turmoil caused by a misunderstanding of SSP's contractual obligations under NDAs with its customers. This is precisely the sort of baseless "subjective beliefs" that are inadequate to state

a claim of constructive discharge. *Roman*, 604 F.3d at 42. *Cf Worthy*, 2017 WL 211609, at *34 (allowing constructive discharge claim to proceed where plaintiff alleged her workspace was daily searched and violated by her co-workers and she was routinely "criticized and berated with derogatory comments," among other things, before she resigned her position).

### 2. Ardito Fails To Plausibly Allege That SSP Subjected Him To A Material Adverse Employment Action Because Of Protected Conduct

FCA retaliation claims are evaluated "under the but-for causation standard," meaning that the employee otherwise would not have been retaliated against but for engaging in "protected conduct." *Lestage v. Coloplast Corp.*, 982 F.3d 37, 46 (1st Cir. 2020). Because a FCA retaliation claim requires the adverse employment action to have been taken "because of" the protected activity, the employee must plausibly allege that the employer was motivated to retaliate by the protected activity. *U.S. ex rel. Yesudian v. Howard Univ.*, 153 F.3d 731, 736 (D.C. Cir. 1998).

Given these facts, even if Ardito had alleged (i) "protected conduct," (ii) notice to SSP of that conduct, (iii) and cognizable adverse employment action (he has not plausibly alleged any of those elements), the Complaint still does not support an inference that SSP retaliated against him "because of" any "protected conduct." The Eleventh Circuit's recent holding regarding a plaintiff's failure to plead causation illustrates the point. In *United States v. HPC Healthcare, Inc.*, the plaintiff "alleged that she was demoted in 2009 'because she raised ethical issues concerning violations of the [FCA].'" 723 F. App'x 783, 792 (11th Cir. 2018). She also alleged that she had "objected to the default enrollment" of certain patients in the Medicare program at issue. *Id.* But the Eleventh Circuit found that the plaintiff's "allegation that she was demoted 'because she raised ethical issues concerning violations of the [FCA]' was a legal conclusion that fails to satisfy federal pleading requirements." *Id.* at 792. "[E]ven assuming" the plaintiff's objection "constituted

protected activity," she "failed to plead a causal link between that objection and any of the actions she alleged constituted retaliation." *Id.*

Here as well, Ardito's attempt to satisfy the causation requirement is based on pleaded conclusions and not facts. He alleges that SSP retaliated against him "by making unlawful and retaliatory demands directly on his adult daughter living in California and her then employer." Compl. ¶ 66. As mentioned previously, such litigation conduct by itself is not retaliation forbidden by the FCA. *Cf. Sherman*, 2020 WL 5105164, at *6. Further, Ardito severs the causal link, if any, between his alleged whistleblowing and the preservation letters by conceding that SSP sent the letters after he filed his complaint with the Commission, not to punish him for any of the ostensible "protected conduct." *See* Compl. ¶ 4 ("After Ardito filed a whistleblower complaint with the Maine Human Rights Commission (MHRC), Solvay further retaliated against Ardito by making unlawful and burdensome demands directly on his adult daughter living in California and her then employer.").

Ardito also pleads that "Solvay intentionally retaliated against him including by creating a hostile work environment for him, constructively discharging him on December 10, 2018, from his full-time position, and through other acts of retaliation including making unlawful and retaliatory demands on his adult daughter and her employer." *Id*. ¶ 77. Yet those allegations are exactly the formulaic potpourri of "legal conclusion that fails to satisfy federal pleading requirements." *HPC Healthcare, Inc.*, 723 F. App'x at 792. Indeed, Ardito does not plead how Solvay "constructively discharge[ed] him," how it "creat[ed] a hostile work environment for him," what the rationale for the retaliation was, or why that explanation was invalid—for example, that it rested on made-up reasoning. Ardito's failure to allege these basic details is understandable: he

did not engage in "protected conduct" at all, and SSP has never retaliated against him for any of the matters alleged in the Complaint.

Ardito must (yet cannot) allege sufficient factual content from which the Court could conclude that his employment was plausibly terminated or injured because of whistleblowing. Because he has not done so, his FCA retaliation claim should be dismissed.

## II. Ardito Does Not Allege Sufficient Facts To Maintain A MWPA or MHRA Claim

Ardito's Maine state law claims fare no better. To plead a retaliation claim under the MHPA (which prohibits employers from discriminating against employees because of actions protected under the MWPA) Ardito must allege facts showing: (1) he engaged in activity protected by the statute; (2) he was subject to an adverse employment action; and (3) there was a causal link between the protected activity and the adverse employment action." *Halkett v. Corr. Med. Servs., Inc.*, 763 F. Supp. 2d 205, 220 (D. Me. 2011).[4] Ardito has failed to do so, and his Complaint's state law claims should likewise be dismissed.

### A. Ardito Has Not Alleged Protected Activity Under Maine Law

The MWPA protects employees who, in relevant part, "report[] orally or in writing to the employer or a public body what the employee has reasonable cause to believe is **a violation of a law**." 26 M.R.S.A. § 833(1)(A) (emphasis added). While "the complained-of conduct need not *actually* be illegal," the employee must prove that a reasonable person might have believed that it was." *Tripp v. Cole*, 425 F.3d 5, 9 (1st Cir. 2005) (quotation omitted).

Here, Ardito asserts that the complained-of conduct relates to alleged breaches of NDAs between Solvay and its customers. Compl. ¶¶ 25, 36, 46–47, 65. Maine courts, however, have

---

[4] While the MWPA "does not provide whistleblowers with a direct cause of action." *Winslow v. Aroostook Cty*, 736 F.3d 23, 30 n.6 (1st Cir. 2013), "[t]he MHRA prohibits employers from discriminating against employees because of actions protected under the [MWPA.]" *Currie v. Indus. Sec., Inc.*, 2007 ME 12, ¶ 12, 915 A.2d 400.

held time and again that it is *not* reasonable to believe that breaching a private contract constitutes illegal activity within the MWPA's purview. For example, in *Galouch v. Department of Professional and Financial Regulation*, 2015 ME 44, 114 A.3d 988, the plaintiff was concerned that a court reporter had committed "breaches of contract" that "violated the Bureau of General Services' Rules for Purchase of Services and Awards." *Id.* at ¶ 3. Sometime after reporting her concerns to her supervisor and directly to the court reporter, she was terminated for exceeding the scope of her authority. *Id.* at ¶¶ 5–7. The plaintiff sued her former employer, alleging that she had been terminated in retaliation for reporting breaches of contract. *Id.* at ¶ 9. Affirming the lower court's dismissal, the Supreme Court held that her "subjective belief alone is insufficient to meet the WPA's 'reasonable cause' requirement," and that "even assuming that the court reporter . . . was in breach of her contract with the Department, a reasonable person could not consider that conduct to be a violation of the law," meaning that the plaintiff's complaints to her supervisor "did not constitute protected activity." *Id.* at ¶¶ 13–16; *see also Bard v. Bath Iron Works Corp.*, 590 A.2d 152, 154 (Me. 1991) (dismissing employee's claim because he "established no more than that he believed that a violation of contract provisions might have occurred"). Ardito's MWPA fails for this reason alone.

Further, to the extent Ardito argues that his actions were motivated by a belief that SSP's purported contract breaches violated the FCA (*see* Compl. ¶ 70 ("Ardito engaged in protected conduct under the False Claims Act and MWPA by taking actions in furtherance of a False Claims Act action and making efforts to stop one or more violations of the False Claims Act")), his claim still fails because any such belief was not objectively reasonable as a matter of law. The First Circuit's analysis in *Tripp v. Cole* illustrates this point. In that case, the town manager of Bethel, Maine asked the plaintiff police chief to intercede on behalf of a constituent in a "dog at large"

prosecution. 425 F.3d at *7. The plaintiff refused to comply with the request because he mistakenly believed in good faith that the town manager's request amounted to an illegal obstruction of government administration. Four months later, citing various issues unrelated to the dog at large incident, the town manager suspended the plaintiff and later fired him. The plaintiff sued the town manager, claiming that the town manager had retaliated against plaintiff because of his protected activity (*i.e.*, resisting the town manager's attempted obstruction). In affirming dismissal of his retaliation claim, the First Circuit held that a reasonable person would not have considered the town manager's request to be an illegal obstruction of government administration. The plaintiff's subjective belief to the contrary was of no moment, and his MWPA claim was dismissed for failure to establish protected activity. *Id*. at *9–10.

So too with Ardito. To the extent Ardito believed that purported breaches of customer NDAs violated the FCA, such belief is not objectively reasonable as a matter of law. *See Elliott-Lewis*, 411 F.Supp.3d at 206 ("[W]hen a plaintiff's FCA retaliation claim is based on a contractual . . . violation, she must provide some reasonable basis for believing that the violation caused the submission of false claims and was material to the payment of any claims."). As set forth above in Part I.A, Ardito provides no connection between the perceived confidentiality threats to any fraudulent claim for payment to the government. Accordingly, Ardito has not pled that he engaged in any protected activity under Maine law.

### B. Ardito Has Not Plausibly Alleged A Materially Adverse Employment Action

Ardito's state law claims also fail because his allegations do not support a plausible inference that he suffered an adverse employment action. "An adverse employment action is an action that materially changes the conditions of the employee's employment." *Sullivan v. St. Joseph's Rehab. & Residence*, 2016 ME 107, ¶ 14, 143 A.3d 1283. Traditional examples of "adverse employment action" include termination, *id*., suspension, *Rivers v. Baltimore Dep't of*

*Rec. and Parks*, 1990 WL 112429, at *10 (D. Md. Jan. 9, 1990), demotion, *Corrigan v. State of R.I.*, *Dep't of Bus. Reg.*, 820 F. Supp. 647, 655 (D.R.I. 1993), docked pay, *Noviello v. City of Boston*, 398 F.3d 76, 88 (1st Cir. 2005), and unfavorable performance evaluations resulting in negative consequences, *Colon v. Medtronic, Inc.*, 2015 WL 5089494, at *13 (D.P.R. Aug. 27, 2015). Ardito does not allege facts indicating that he has suffered any of these. As set forth above in Part I.C.1, Ardito has not plausibly alleged that he was subject to adverse employment action, including the fostering or creation of a "hostile work environment" or a "constructive discharge." This conclusion holds true under Maine law.

### 1. Ardito Has Not Plausibly Alleged A Hostile Work Environment

As a threshold matter, the Maine Law Court has not held that a hostile work environment alone can constitute an adverse employment action under the MWPA. *See Blake v. State*, 2005 ME 32, ¶ 10, 868 A.2d 234, 234 ("We have not yet addressed whether a hostile work environment claim can constitute adverse employment action pursuant to the [MWPA]."). Assuming *arguendo* that such a claim is permitted, Ardito has not alleged facts sufficient to plead that SPP created a hostile work environment in response to his actions.

In Maine, "[t]o demonstrate the presence of a hostile work environment, an employee must show repeated or intense harassment sufficiently severe or pervasive to create an abusive working environment." *Id.* at ¶ 8 (internal quotations and citation omitted). "When determining whether a hostile work environment claim exists, the court must look to all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (cleaned up). "The type of harassment shown must be severe enough to cause the workplace to become hostile or abusive." *Id.* at ¶ 9. "When analyzing a hostile work environment claim, the court must determine whether the environment was

subjectively abusive to the employee, and, in addition, whether that environment was hostile or abusive pursuant to an *objective* standard." *Id.* (emphasis added). Ardito's allegations do not come close to meeting this standard.

Again, Ardito does not allege that his supervisors or co-workers uttered offensive, unkind, or embarrassing statements concerning him. He does not allege that he was physically abused or menaced by anyone at SSP. In fact, he does not allege a single incident of such harassment, let alone persistent abuse or persecution as needed to plead a hostile work environment. Ardito alleges only that he suffered mental anguish due to his mistaken belief that he was daily engaged in illegal acts in the course of his job duties and that SSP did not sufficiently address his concerns. Compl. ¶¶ 46–48. Such internal struggles are insufficient to plead a "hostile or abusive" work environment, particularly when stacked up against the multiple olive branches that SSP extended to Ardito, including the review of his concerns by human resources, his supervisors, and SSP's legal and compliance organization, paid medical leave, and a position on the Steering Committee designed to address the concerns Ardito raised. *Id.* ¶¶ 26-27, 33-34, 44, 48, 51, 58.

Because Ardito's allegation of a hostile work environment is internally inconsistent and baseless as a matter of law, his MWPA claim should be dismissed.

### 2. Ardito Has Not Plausibly Alleged A Constructive Discharge

To plead a constructive discharge claim, Ardito must plead that his "working conditions were so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Sullivan*, 2016 ME 107 at ¶ 15 (cleaned up); *cf. Pa. State Police v. Suders*, 542 U.S. 129, 148 (2004) ("A constructive discharge involves both an employee's decision to leave *and* precipitating conduct[.]"). As set forth in Part I.C.1 above, Ardito has not alleged that he resigned (he is still employed by SSP) or that he was subject to toxic work "conditions."

### C.    Ardito Has Not Plausibly Alleged a Causal Link

To demonstrate a causal link between his actions and adverse employment action, Ardito "must show that the protected activity (whistleblowing) was a substantial, even though perhaps not the only, factor motivating the [adverse employment action]." *Caruso v. Jackson Lab.*, 2014 ME 101, ¶ 13, 98 A.3d 221 (quotation omitted). "[E]ven if more than one factor affects the decision to" subject the employee to an adverse employment action, "the employee may recover if one factor is [unlawful discrimination] and in fact it made a *difference*" in determining whether the employee would be adversely treated. *Id.* Ardito has not pleaded the requisite causal link.

First, because Ardito has not pleaded facts to show "protected activity" or "adverse employment action" in the first instance, he has also not pleaded facts to show a causal link between a protected activity and an adverse employment action. Second, Ardito does not allege facts substantiating that SSP treated him differently or took action against him following or because of his complaints regarding actual or potential information leaks. All Ardito alleges is that SSP went about its business as usual and that it failed to reach conclusions or make process changes that he felt were necessary. *See generally* Compl. ¶¶ 3, 33, 34, 38, 39, 46, 47, 52–53, 57, 59, 61, 62–63. But it was the **persistence of pre-existing processes**—*i.e.*, employee access and use of purportedly insecure data systems—that Ardito alleges resulted in a hostile work environment and constructive discharge. *Id*. ¶¶ 47–48. The Court would need to bend time in order to conclude that pre-existing work conditions were instituted by SSP in retaliation for his reports. Ardito's theory of causation is illogical and unable to support his state law claims.

### <u>CONCLUSION</u>

Because Ardito has not and cannot plausibly allege retaliation actionable under the federal False Claims Act or Maine state law, the Court should dismiss his Complaint in full with prejudice.

Dated: June 8, 2021

Respectfully Submitted,

*/s/ Joshua A. Randlett*
Joshua A. Randlett
Rudman Winchell
84 Harlow Street
Bangor, Maine 04402
207-992-4455
jrandlett@rudmanwinchell.com

Rick Bergstrom*
Scott Morrison*
Jones Day
4655 Executive Drive, Suite 1500
San Diego, CA 92121-3134
858-314-1118
rjbergstrom@jonesday.com
scottmorrison@jonesday.com

B. Kurt Copper*
Jonathan D. Guynn*
Jones Day
2727 N. Harwood Street
Dallas, TX 75210
214-969-5163
bkcopper@jonesday.com
jguynn@jonesday.com

*Attorneys for Defendant Solvay Specialty Polymers USA, LLC*

* *Admitted Pro Hac Vice*

## **CERTIFICATE OF SERVICE**

I certify that the foregoing was filed through the Court's ECF system on June 8, 2021,

notice of which will be sent electronically to all counsel of record.

/s/ Joshua A. Randlett
Joshua A. Randlett
Rudman Winchell
84 Harlow Street
Bangor, Maine 04402
207-992-4455
jrandlett@rudmanwinchell.com

*Attorneys for Defendant Solvay Specialty*
*Polymers USA, LLC*